Elissa **CARRON**, an infant, by her parent and natural guardian, Laurie Carron and Laurie Carron, Individually, Plaintiffs,

v.

**HOLLAND AMERICA LINE–WEST-·OURS INC., Wind Surf Limited and Hal Cruises Limited, Defendants.**

**No. 98 CV 5645 (ADS).**

United States District Court, E.D. New York.

June 12, 1999.

Law Offices of Daniel M. Tanenbaum, Great Neck, New York, Daniel M. Tanenbaum, of counsel, for plaintiffs.

Healy & Baillie, LLP, New York City, John G. Ingram, Julie Pateman Ward, of counsel, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On September 17, 1998, Laurie Carron filed a complaint on behalf of her daughter, Elissa Carron, an infant, and herself (the "plaintiffs") against Holland American Line–Westours Inc. ("Holland"), Wind Surf Limited ("Wind Surf"), and HAL Cruises Limited ("HAL") (collectively the "defendants") alleging personal injuries sustained by Elissa Carron resulting from the alleged negligent conduct of the defendants while she was on a Holland cruise vacation. Elissa Carron alleges that while she was in the pool on the MS Veendam, she was "caused to be propelled into a sharp statute . . . causing injury."

Presently before the Court are two motions by the defendants: First, the defendants move to dismiss the plaintiffs' complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Alternatively, the defendants move to transfer the case to the District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1406(a).

## I. BACKGROUND

The following facts are derived from the pleadings, the contract at issue and the supporting affidavits. Except where otherwise indicated, the facts are not in dispute. The plaintiffs are domiciled and reside in the State of New York. Holland is a corporation with its principle place of business in the State of Washington. Since merging with Westours in 1984, Holland's corporate headquarters have been located in Seattle, Washington.

Through a travel agent, the plaintiffs contracted with Holland for a cruise vacation in 1998. They agreed to the dates, price and payment for a seven day cruise. The plaintiffs received the ticket and cruise contract three weeks prior to the cruise date. The cruise contract contained a forum selection clause, which provided in pertinent part that:

> All disputes and matters whatsoever arising under, in connection with or incident to this contract, the Cruise or the Cruisetour shall be litigated, if at all, in and before the United States District Court for the Western District of Washington at Seattle. . . .

Pursuant to Holland's ticketing and embarkation procedures, an embarkation/ticket receipt form and a cruise contract is issued to families traveling in the same cabin upon receipt of final payment by Holland. On the day of departure, each passenger must check in with a Holland representative who examines their cruise contract and identification, takes the embarkation coupon from the cruise contract and returns the cruise contract to the passenger.

Based on the forum selection clause contained in the cruise contract, Holland argues that either: (1) the plaintiffs' complaint should be dismissed for improper venue; or (2) the case should be transferred to the District Court for the Western District of Washington. In opposition, the plaintiffs contend that the case should remain in the Eastern District of New York for the convenience of the witnesses, the convenience of the parties, and due to the unreasonableness of the forum selection clause. In particular, the plaintiff Laurie Carron asserts that litigation in the State of Washington would cause her and her husband to be compelled to lose additional time from work. In addition, she contends that litigation in the State of Washington would cause her daughter to miss periods of her schooling. Further, the plaintiffs argue that the costs associat-

ed with litigating the case in Washington would be prohibitive. Finally, the plaintiffs argue that it would be inconvenient for their two witnesses, a treating physician and another cruise passenger, both residents of the State of New York, to be compelled to testify in the State of Washington.

## II. DISCUSSION

### A. Validity of the Forum Selection Clause

Federal law governs the enforceability of forum selection clauses in admiralty cases. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In this regard, the Court views the facts in the light most favorable to the party seeking to avoid enforcement of the clause, and, if required, will provide an opportunity for a hearing when material facts are in dispute. *New Moon Shipping Co., Ltd. v. Man B&W Diesel Ag,* 121 F.3d 24, 29 (2nd Cir.1997). Also, the Court may consider supplemental affidavits for the purposes of deciding the question of venue. *ESI, Inc. v. Coastal Power Production Co.,* 995 F.Supp. 419, 422 (S.D.N.Y.1998).

Forum selection clauses are deemed to be prima facie valid. *Carnival Cruise Lines,* 499 U.S. at 589, 111 S.Ct. 1522. A plaintiff challenging the validity of a forum selection clause has the burden to make a "strong showing" in order to overcome the presumption of enforceability. *New Moon Shipping,* 121 F.3d at 29 (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). The non-negotiable nature of a forum selection clause in an ordinary commercial cruise ticket does not negate its enforceability. *Carnival Cruise Lines,* 499 U.S. at 593, 111 S.Ct. 1522. However, the court will scrutinize such clauses for fundamental fairness. *Id.* at 595, 111 S.Ct. 1522.

Factors that the Court must consider in deciding the fundamental fairness of a fo-

rum selection clause include: whether the plaintiffs had notice of the forum selection clause; whether the defendant chose its corporate location to avoid litigation; whether the forum selection clause designates a "remote alien forum;" and whether the defendant acted in bad faith in obtaining the plaintiffs' consent to the forum selection clause. *Carnival Cruise Lines,* 499 U.S. at 594–595, 111 S.Ct. 1522; *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 9–10 (2nd Cir.1995).

Reviewing these factors and the evidence establishing Holland's ticketing and embarkation procedures, the Court is satisfied that the plaintiffs had notice of the forum selection clause. In addition, there is no evidence that Holland located its business in Washington State in an effort to avoid litigation. Holland's principal place of business has been located in the Western District of Washington State since 1984 when a move occurred in connection with a merger. While none of Holland's cruises depart from Washington State, a significant number of the cruises do depart from Vancouver, Canada, a nearby location. Washington cannot be considered a "remote alien forum" nor can the dispute be considered an essentially local one given that Holland has cruises departing from both the east and west coasts. *See Carnival Cruise Lines,* 499 U.S. at 594, 111 S.Ct. 1522 (holding that Florida was not a remote alien forum to plaintiffs from Washington State). Finally, there is no evidence that Holland obtained the plaintiffs' consent to the forum selection clause through fraud or overreaching or that it otherwise acted in bad faith in obtaining the plaintiffs' consent to the forum selection clause.

Therefore, the Court finds that the plaintiffs have failed to satisfy their burden in order to set aside the forum selection clause based on fundamental unfairness of the clause. In sum, the presumption of enforceability has not been overcome by a strong showing

that the forum selection clause was fundamentally unfair.

## B. Holland's Motions

■  28 U.S.C. 1406(a) provides that:

The district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

A valid forum selection clause does not render improper what would otherwise be a proper venue. *Haskel v. FPR Registry, Inc.,* 862 F.Supp. 909, 913 (E.D.N.Y.1994). The Court in *Haskel* held that a motion to dismiss for improper venue based on a forum selection clause should be denied, as the issue is not whether venue is proper, but whether there is a contractual right to litigate in another forum. *Id.* at 915. Therefore, at the outset, the Court notes that the proper procedure for the Court to apply in enforcing the forum selection clause at issue is not by dismissal pursuant to Fed.R.Civ.P. 12(b)(3) but by an analysis under 28 U.S.C. 1406(a).

■  Initially, the Court notes that the existence of a forum selection clause is *a relevant and significant factor in determining whether to transfer the dispute to the contractual forum. Haskel,* 862 F.Supp. at 913. In seeking to avoid a transfer based on an otherwise valid forum selection clause, the plaintiff has the burden of proving that "trial in the contractual forum will be so gravely difficult and inconvenient that [s]he will for all practical purposes be deprived of [her] day in court." *Haskel,* 862 F.Supp. At 912 (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). Inconvenience and expense alone are insufficient to form a basis for not enforcing a contractual forum selection clause. *Bense v. Interstate Battery Sys. of America,* 683 F.2d 718, 722 (2nd Cir.1982).

1.  *The New World of Video Depositions and Testimony and Two–Way Closed–Circuit Testimony*

■  While the Court sympathizes with the plight of the plaintiffs facing the prospect of traveling to Washington State from New York, the travel inconvenience to the plaintiffs is not sufficient to prevent transfer to the Western District of Washington. In addition, the possibility that school or work may be missed, and that the plaintiff may have to pay substantial fees for witnesses to travel from New York to Washington State does not demonstrate that the plaintiffs would be deprived of their ability to vigorously prosecute their claims so that they will be deprived of their day in Court. The Court notes the familiar reality of living in this era that coast to coast traveling has become commonplace in today's high-tech, modernized, global world. As we move into the 21st Century, a litigant residing in New York can now litigate thousands of miles away from home. We are now a mobile community both for pleasure and business. In short, modern travel has made the World smaller and travel to the State of Washington to litigate a viable cause of action is not unprecedented or overly burdensome.

Moreover, the flexibility present in the modern Federal Courts will undoubtedly ensure that alternatives are available so that the plaintiffs are not prevented from fully and fairly pursuing their claims. As suggested by the defendants, for example, "[i]f this Court transfers the action to Washington, defendants will make every effort to accommodate plaintiffs and will attempt [to] schedule discovery and trial during one of plaintiff, Elissa Carron's school vacations ... or during summer recess.... Furthermore, defendants will attempt to schedule Elissa Carron's IME while she is in Washington for her deposition. Moreover, defendants consent to take video depositions of plaintiffs' treating physician and witness Ms. Levering, in New York." The Court approves of these

suggestions and notes that the defendants should be held to these promises.

In this vein, the Court notes the Second Circuit's logical endorsement of alternate methods to traditional in-court testimony under extenuating circumstances. In *United States v. Gigante*, 971 F.Supp. 755 (E.D.N.Y.1997), *affm'd*, 166 F.3d 75 (2d Cir.1999), the Court recently held that the conviction of Vincent "the Chin" Gigante did not violate the Sixth Amendment's Confrontation Clause, even though a Government witness testified via two-way closed-circuit television from a remote location. The Second Circuit held that:

> [t]he closed-circuit television procedure utilized for Savino's testimony preserved all of these characteristics of in-court testimony: Savino was sworn; he was the subject to full cross-examination; he testified in full view of the jury, court, and defense counsel; and Savino gave his testimony under the eye of Gigante himself. Gigante forfeited none of the constitutional protections of confrontation.

*Id.* at 80. Clearly, if Gigante's Sixth Amendment rights were not violated when Savino testified at a criminal trial via two-way closed-circuit television, the defendants would be hard pressed to claim that any of their rights would be denied if the plaintiffs physician and witness were to testify in a similar manner. Furthermore, upon a showing of good cause, the Federal Rules of Civil Procedure specifically, "permit presentation of testimony in open court by contemporaneous transmission from a different location." (Fed.R.Civ. P.43(a)).

Therefore, the Court finds that the plaintiffs have failed to meet their burden of demonstrating that transferring this case to the Western District of Washington, as agreed upon in the forum selection clause, would be of such great inconvenience so as to deprive them of their day in Court.

## III. CONCLUSION

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby,

**ORDERED,** that the defendants' motion to dismiss the complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is **DENIED;** and it is further

**ORDERED,** that the defendants' motion to transfer this case to the District Court for the Western District of Washington pursuant to 28 U.S.C. § 1406(a) is **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to transfer this case to the District Court for the Western District of Washington.

**SO ORDERED.**